No. 3435

Second Circuit

LOUISIANA CENT. LUMBER CO. v. WOMACK ET AL.

(January 21, 1929. Opinion and Decree.)

Stubbs & Thompson, of Monroe, attorneys for plaintiff, appellee.

E. L. Walker, of Ruston, H. W. Ayres, of Jonesboro, and Theus, Grisham & Davis, of Monroe, attorneys for defendants, appellants.

## STATEMENT OF THE CASE.

REYNOLDS, J. Plaintiff, Louisiana Central Lumber Company, alleging itself to be the record owner of the pine and cypress timber standing on the S.E.¼ of N.E.¼ of section 3, township 14 north, range 1 east, in Jackson Parish, La., that it was worth $1,000, and that People's Bank, a corporation, and W. D. Womack and J. T. Pierce, had unlawfully cut part, and, unless restrained by the court, would cut the balance of it, and would remove the timber from the land and convert it to their own use, to plaintiff's irreparable injury, obtained an injunction restraining them from cutting any more of the timber and a writ of sequestration impounding that cut.

Defendants admitted the cutting and the intent of the People's Bank to convert the timber to its own use, and denied that plaintiff was the owner of the timber, and alleged that the People's Bank was the owner thereof, and set up title thereto under purchase at sheriff's sale.

On these issues the case was tried, and there was judgment in favor of the plaintiff and against the defendants, decreeing the plaintiff to be the owner of the timber in controversy and perpetuating the injunction and sustaining the sequestration.

From this judgment, the defendants appealed.

## OPINION.

The facts are few and simple and the case presents only a question of law.

On July 24, 1907, George Ellis and the Louisiana Central Lumber Company entered into a contract in words and figures as follows:

"State of Louisiana, Parish of Jackson.

"Know all men by these presents, that George Ellis, a resident of Jackson parish, state of Louisiana, for and in consideration of the sum of one hundred and seventy-five 00-100 dollars, the receipt whereof is hereby acknowledged, have sold and do by this act, grant, bargain, sell, transfer, convey, and deliver unto the Louisiana Central Lumber Company, a corporation, duly and legally organized and existing under the laws of the state of Missouri, the principal office of said corporation being at Kansas City, Missouri, its successors and assigns, with warranty of title, all of the merchantable pine timber growing, standing and being on the following described premises, to wit: SE¼ of NE¼ of Section (3) three Tp-14 N R (1) one East La. Mer. in Jackson parish, state of Louisiana, together with a right of way, fifty feet wide, for a tram road railroad and such other branch roads as may be necessary across said premises, for the purpose of transporting all timber belonging or which may belong to said Louisiana Central Lumber Company. And all spur, log yards, camping, building and roadway privileges on said premises, and such other facilities as are necessary for the cutting, hauling and removing of said timber therefrom for term of (20) twenty years from the date hereof.

"The title of the land herein described remaining in George Ellis, he retaining the use thereof for agricultural purposes, so far as not to interfere with the growing, standing and lying timber and the right to cut, haul, remove and transport the same herein granted the Louisiana Central Lumber Company, a corporation, its successors or assigns.

"Done and signed in the presence of the subscribing witnesses on this 24th day of July, A. D. 1907.

his<br>
"George X Ellis.<br>
· mark

"Attest: A. J. McDaniel
　　　"J. N. Gregory.

"State of Louisiana, Parish of Caldwell.

"Before me, the undersigned authority, this day personally appeared A. J. McDaniel, who, on oath, says he saw the maker of the foregoing deed sign it for the pur-

poses and considerations herein set forth, and he and J. N. Gregory signed it as attesting witnesses, and now recognizes all the signatures thereto to be true and genuine.

"A. J. McDaniel.

"Sworn to and subscribed before me this the 22nd day of August, A. D. 1907.

"(Seal.) E. D. Gardner, Notary Public."

This act was filed for record on August 29, 1907, and, on the same day, was duly recorded in Book N, at page 131, of the record of Conveyances of the parish of Jackson.

On January 27, 1923, George Ellis and John W. King entered into a contract in words and figures as follows, to wit:

"State of Louisiana, Parish of Jackson.

"Be it known, that this day, before me, J. B. Thornhill, Notary Public in and for said parish, duly commissioned and sworn, came and appeared George Ellis, a resident of the parish of Jackson, state of Louisiana, and a married man whose wife, before marriage, was Rosa Williams, now living with him, who declared that he is justly and legally indebted unto John W. King, a resident of the parish of Caldwell and state of Louisiana, a married man whose wife is Ada King (born Gregory) in the sum of two hundred eighty-two and 00-100 dollars, in evidence of which indebtedness he has this day made, executed and given his one certain promissory note, dated with this act, payable to the order of John W. King, made due and payable on the 27th day of January, 1924, with eight per cent. interest from date until paid and paraphed "Ne Varietur" of this date by me, Notary, to identify it herewith: And, in order to secure the payment of said note, interest and all costs, including ten per cent. attorney's fees on amount sued for in event of suit for collection of said note, the said George Ellis declares that he does by these presents specially mortgage and hypothecate unto and in favor of said John W. King, his heirs and assigns, or any future holder of said note, the following described property, to wit: The East half of the Northeast quarter; the Northeast quarter of the Southeast quarter; the Southwest quarter of the Northeast quarter; ten (10) acres off the south side of the Northwest quarter of the Northeast quarter; all in Section 3, Township 14 North Range 1 East. All of said land lying and being in Jackson parish, Louisiana, and containing 170 acres, more or less, and being herein mortgaged with all the buildings and improvements thereon.

"It is especially agreed and understood that this mortgage is given and accepted as a first mortgage on the Northeast quarter of the Northeast quarter of Section 3 Township 14 North Range 1 East and as a second mortgage on the other land described herein.

"The said mortgagor further declares that he hereby waives and relinquishes in favor of the mortgagee or any future holder of the note herein any and all homestead claims or exemptions to which he is entitled by law upon said property.

"The said George Ellis hereby binds himself not to alienate, deteriorate or incumber said property to the prejudice of this mortgage, which shall import confession of judgment and waive benefit of appraisement. The certificate of mortgage is hereby waived by the parties.

"Done and passed at my office in said parish of Caldwell in presence of J. B. May and E. B. Cottingham, Jr., competent witnesses, on this the 27th day of January, A. D. nineteen hundred and 23.

his<br>"George X Ellis.<br>mark<br>"J. W. King.

"Attest: J. B. May, M. D.
"E. B. Cottingham, Jr.

"(Seal.) J. B. Thornhill, Notary Public.
"State of Louisiana, Parish of Caldwell.

"Be it known that this day, before me the undersigned authority, duly commissioned, sworn and qualified, in and for the parish of Caldwell and State of Louisiana, personally came and appeared Rosa Ellis (born Williams) wife of George Ellis, who appears for the purpose of aiding and au-

thorizing his said wife, who hereby declares that she does hereby join and concur in the above waiver and relinquishment of all of her homestead rights in the land described in the foregoing mortgage and consents thereto and further consents and concurs in all of the stipulations of the foregoing mortgage.

"Done and passed in my office in the parish of Caldwell, state of Louisiana, in the presence of H. T. Tobb and O. L. Womack, competent witnesses, on this the 14th day of May, 1923.

her

"Rosa X Ellis.

mark

his

"George X Ellis.

mark

"Attest: H. T. Tobb.

"O. L. Womack.

"(Seal.) S. M. Taylor, Notary Public."

This act was filed for record on May 18, 1923, and on the same day duly recorded in Book L, at page 440, of the record of Mortgages of Jackson parish.

On July 5, 1927, George Ellis and the Louisiana Central Lumber Company entered into a contract in words and figures as follows, to wit:

"State of Louisiana, Parish of Jackson.

"Know all men by these presents, that George Ellis, a resident of Jackson parish, state of Louisiana, for and in consideration of the sum of one hundred and 00-100 dollars, the receipt whereof is hereby acknowledged, have sold, and by this act grant, bargain, sell, transfer, convey and deliver unto the Louisiana Central Lumber Company, a corporation duly and legally organized and existing under the laws of the state of Missouri the principal office of said corporation being at Kansas City, Missouri, its successors and assigns, with full warranty of title, all of the merchantable pine and cypress timber growing, standing and being on the following described premises, to wit: S.E.¼ of N.E.¼ of Section 3 Township 14 North Range one

East. One medium size cypress reserved for covering boards. In Jackson parish, state of Louisiana, together with a right of way fifty feet wide for a tram railroad and such branch roads as may be necessary across said premises, for the purpose of transporting all timber belonging or which may belong to said Louisiana Central Lumber Company. And all spur, log yards, camping, building and roadway privileges on said premises and such other facilities as are necessary for cutting, hauling and removing of said timber therefrom, for the term of three (3) years from the date hereof.

"This deed is given for the purpose of extending the time for cutting and removing the timber as given in a former deed. The title of the land herein described remaining in George Ellis he retaining the use thereof for agricultural purposes, so far as not to interfere with the growing, standing and lying timber and the right to cut, haul, remove and transport the same herein granted the Louisiana Central Lumber Company, a corporation, its successors or assigns.

"Done and signed in the presence of the subscribing witnesses on this the 5th day of

his

July, A. D. 1927 George X Ellis.

mark

"Attest: A. J. McDaniel.

"H. J. Sellers.

"State of Louisiana, Caldwell parish.

"Before me, the undersigned authority, this day personally appeared A. J. McDaniel, who, on oath, says, he saw the maker of the foregoing deed sign it for the purposes and consideration therein set forth, and he and H. J. Sellers signed it as attesting witnesses, and now recognize all the signatures thereto to be true and genuine.                    "A. J. McDaniel.

"Sworn to and subscribed before me this 5 day of July, A. D. 1927.

"R. C. Cantrell, Notary Public. (Seal.)"

This act was filed for record on July 8, 1927, and was recorded on July 11, 1927,

in Book 40, at page 314, of the record of Conveyances of Jackson parish.

The debt secured by the mortgage not being paid, the owner and holder thereof, John W. King, commenced proceedings, via executiva, on September 12, 1927, to have the mortgaged property seized and sold for the satisfaction thereof.

And the mortgaged property was duly seized and advertised to be sold, and was, by the sheriff of Jackson parish, on December 10, 1927, adjudicated to the People's Bank for the price of $2,325.

A deed to carry into effect the sale, wherein the property sold was described as "E½ of NE¼; NE¼ of SE¼; SW¼ of NE¼ Section 3 Tp. 14 N. R. 1 E." was duly executed by the sheriff to the People's Bank, and was filed for record on December 30, 1927, and recorded on December 31, 1927, in Book 40, at page 561, of the record of Conveyances of Jackson Parish.

Neither in the petition for executory process, the order therefor, the seizure, advertisement of sale, or sheriff's deed was the timber excluded.

The People's Bank, as owner of the land and timber in virtue of the sheriff's deed, undertook to cut and remove the timber, and was met by this suit and the writs of injunction and sequestration therein issued.

## OPINION.

Plaintiff makes the alternative contentions:

1. That the contract of 1907 fixed no time limit for the removal of the timber; that the twenty-year limitation therein mentioned only refers to logging privileges; that its right to remove the timber subsisted until limited by agreement between itself and the landowner or judg-

ment of the court; and that the contract of 1927 fixed a time limit therefor.

2. That, if the twenty-year limitation refers to the timber also, the sale of the timber created a new and separate estate; that the mortgage did not purport to affect this estate, and could not have affected it even had it purported to do so.

I. We cannot concede that the twenty-year limitation only refers to logging privileges. True, the words expressing it are found in that division of the contract relating to those privileges, but the rule is that, in interpreting contracts, the instrument as a whole must be considered and all its parts construed together.

So considered, we think the limitation also refers to the timber.

The duration of the logging privileges was a minor matter as compared with the duration of the right to remove the timber, and it is not probable that the purchaser would have exacted twenty years' time for the former and not even one for the latter, especially so in view of the fact that it would have had logging privileges without expressly stipulating for them, since they follow as an accessory in a sale of timber.

And we are confirmed in this opinion by the interpretation put by plaintiff itself on that contract in the contract of 1927.

The latter is not a renewal of the former but a new purchase of the timber and the logging privileges for a new price. If the plaintiff had believed its time to remove the timber was indefinite, it could and doubtless would have had it definitely fixed by agreement with the landowner or judgment of the court without price.

We are of the opinion that where, as here, a landowner, having sold the growing timber on his land, with a fixed time for

its removal, subsequently grants a mortgage on the land, he cannot thereafter, without permission of the mortgagee, again sell the timber or extend the time allowed for its removal, to the prejudice of the mortgage.

"The mortgage has the following effects: 1. That the debtor cannot sell, engage or mortgage the same property to other persons, to the prejudice of the mortgage which is already made to another creditor." C. C. art. 3397.

This conclusion is not, we think, in conflict with that in Big Pine Lumber Co. vs. Hunt, 145 La. 342, 82 So. 363. Here a date was fixed before which the timber should be removed. There no date was fixed.

In that case, Mrs. Lewis, being the owner of both land and timber, sold the timber to Hunt, and in the deed reserved the timber on it to herself, without, however, fixing any time limit within which she should remove it. Thereafter she sold timber to Louisiana Saw Mill Company, with a limit of six years' time in which to remove it. Before the expiration of the six years, she extended the time to remove the timber, without the consent of Hunt, the landowner. And the question was, Was the extension valid quo ad Hunt? The court saying:

"Mrs. Lewis had the undoubted right to reserve to herself the ownership of the timber when she sold the land to the defendant, in 1905. This reservation by her was made without any time limit being fixed within which she was to remove the timber; and, until defendant had invoked the process of the court to fix a reasonable time within which the timber was to be removed by Mrs. Lewis, she had the indefinite time fixed in the act of sale in which to remove the same. This defendant has never done. Therefore Mrs. Lewis had the right to remove the timber for and during an indefinite time, and she had the right to transfer this right to remove to her assigns. It is true that she had limited, in 1905, in selling the timber to the Louisiana Saw Mill Company, the right to remove the pine timber to six years from that date; but she, at the same time, had the right to extend this limitation to cut and remove the timber before said term had expired, or to renew the right after it had expired, and the Louisiana Saw Mill Company had the right to transfer to plaintiff the pine timber owned by it, and the right to remove same within the extended time."

Mrs. Lewis had an indefinite time in which to remove the timber, and she might have transferred to her vendee all 'of this indefinite time; but she only transferred to it a *section* of her indefinite time, tacitly retaining the balance of it.

"A sale of all the cypress timber fit for saw mill purposes on a certain tract of land, for a cash price, with the exclusive right and privilege to cut and remove the same for a period of five years, is a conveyance of only so many trees as the purchaser may cut and remove within the time designated, the balance remaining the property of the vendor." St. Louis Cypress Co. vs. Thibodaux, 120 La. 834, 45 So. 742.

If Mrs. Lewis might have given her purchaser all of her indefinite time in the first instance, of course she could thereafter give it the remainder of that time or a part of it, not only on the principle of the greater containing the less, but also because, if the timber had not been removed within the six years, it would have reverted to her because her indefinite time had not been limited by contract or judgment of court, and, if it was hers, she might, of course, dispose of it again. Had she in the first instance granted her purchaser all of her indefinite time to remove the timber, Hunt, the landowner, would not have been prejudiced, and would have had no right to complain. He could not have been prejudiced and had no right to complain because she subsequently gave that purchaser the balance of her time.

But, in the case at bar, the situation was different. Here a fixed time limit was put upon plaintiff's right to remove the timber by its vendor. If the timber had not been removed within the time limit, it would have reverted to Ellis as the landowner.

"Standing timber is property subject to be acquired separately from the land on which it grows, but when sold it must be cut and removed within the period agreed on by the parties or fixed by the court in default of agreement, otherwise it reverts to the owner of the land. * * *" Ward vs. Hayes-Ewell Co., 155 La. 15, 98 So. 740.

Ellis, having mortgaged the land, could not thereafter engage the land to the prejudice of the mortgage. And it is immaterial, for this purpose, whether the contract of 1927 was a new sale of the timber or an extension of the twenty years' time allowed to remove it. Either one engaged the land to the prejudice of the mortgage. Manifestly, if Ellis could give three more years' time to remove the timber, he might equally well give twenty more or even fifty and so render the mortgage worthless as a security; for who would pay taxes for fifty years or even twenty years on land for some one else to grow timber on.

We are of the opinion that plaintiff's right to remove the timber under the contract of July 24, 1907, was limited to twenty years from that date.

Plaintiff, in brief, says:

"In the case here presented, the mortgage and the sheriff's deed thereunder, contained no mention of the timber on the land and the defendants knew, or were presumed to know from the recorded deed to Louisiana Central Lumber Company, that the timber had been sold and thereby segregated from the land. The timber was no longer an accessory to the land; it had been converted into a separate and distinct immovable estate; and, as an im-movable estate, the timber thereon was, by fiction of law, as distinct and separate from the land on which it was growing as though it was not on or a part of the land. If the timber was not an accessory to the land when the mortgage was granted or the sheriff's sale was made, then necessarily the People's Bank did not acquire title to the timber by virtue of the sheriff's sale made in foreclosure of the mortgage granted by Ellis to King. When Ellis sold the timber, there were two distinct separate immovable estates created. One, the land estate, vested in Ellis, the other, the timber estate, vested in Louisiana Central Lumber Company. In the Lumber Company was vested the absolute and unconditional ownership of the timber, with the right to go upon the land for the purpose of exercising its rights of ownership in and to the timber. If the timber was a separate and distinct immovable estate, title thereto being vested in Louisiana Central Lumber Company, then Ellis, when he granted the mortgage to King, did not mortgage the timber. If, as was held in Gray versus Edgar Lumber Company, the sale of land, with no mention of the timber and after the timber had been previously segregated and sold separate from the land, did not convey the timber, then, for the same reason, Ellis did not mortgage the timber when he granted the mortgage to King and made no mention of the timber in his contract of mortgage; and, too, as was held in the case of Gray versus Edgar Lumber Company, the segregation of timber from land for purposes of ownership destroys its character as an accessory, then Ellis, when he granted the mortgage to King, did not mortgage or hypothecate the timber as an accessory to the land mortgaged. No mention of the timber having been made in the contract of mortgage, the legal situation is the same as though the timber growing on the land had been expressly excepted from the mortgage. If the mortgagor and mortgagee had excepted the timber from the contract of mortgage, they would have done only what the law and the previous sale contract of the timber had done. If the timber was not mortgaged, either as a separate estate or as an accessory, then Ellis had the right,

as owner of the land, to extend the time for the removal of the timber. * * *"

II. The contention that the estate created by a sale of growing timber apart from the land on which it stands and without any time limit for its removal being fixed, is of perpetual duration is negatived by the jurisprudence on the subject.

In Shepherd vs. Davis Bros. Lumber Co., 121 La. 1011, 46 So. 999, a case where no time was fixed, the court said:

"In like manner, the nonfixing of a time within which the trees should be cut was insignificant, in view of the fact that, in case the purchaser delay unreasonably in the matter, the vendor could call upon the court to supply the defect of the contract in that respect by fixing a time."

In Simmons vs. Tremont Lumber Co., 144 La. 719, 81 So. 263, the act of sale specified no time within which the timber should be removed, and after ten years from its date the landowner brought an action against the owner of the timber seeking to have the latter's rights in the timber to be decreed "prescribed, terminated, and extinguished, and the land freed from any and all the uses, burdens and incumbrances" resulting from the sale of the timber.

The court held that:

"Should the act of sale be considered one without a time limit, that defect might be cured. But this is not a suit calling upon the court to supply the defect by fixing a reasonable time within which the timber would have to be removed. Until a time limit has been fixed, and has expired, plaintiff shows no cause of action to have the timber declared forfeited to him, or that defendant's title to the timber and rights under the contract are prescribed."

In Kavanaugh vs. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275, it was said:

"Until a period is fixed by agreement of the parties, or by the proper court, upon application made to it, the right to remove the timber remains in the grantee indefinitely."

These decisions negative the theory that an estate in timber without time limit for removal is of perpetual duration. It is only of indefinite duration. The owner of the timber is entitled to a reasonable time in which to remove it, and both he and the landowner are entitled to have such time fixed by the court in event they are unable themselves to agree what is a reasonable time. If the duration of the estate in timber, where no time limit for its removal was fixed, were perpetual, then the court would be without authority to delimit it.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, the writs of injunction and sequestration are dissolved, the property sequestered is ordered restored to defendants, and plaintiff's demands are rejected and its suit dismissed at its cost.

ODOM, J., dissents.